WILLIAM K. TOWNSEND ET AL., EXECUTORS AND TRUS-
TEES, *vs.* ROYAL H. WILSON ET AL.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A testator gave all his property to "my executors . . . in trust . . .
to hold on the following trusts ": to pay to *A* one half of the net
annual income; and to provide for the support of *B* during his life,
to an amount not exceeding $500 annually. No provision was made
for the disposition of any surplus income. The executors were
empowered to sell any real estate if they deemed it necessary for
the interest of the trust, and to mortgage the property in order to
secure funds for its improvement. The will then declared that
upon the death of *A* and *B* the trust should cease, and the trust
estate should " belong to my executors and the children " of *C*,
absolutely, one third to each executor and one third to *C's* children.
In a suit to construe the will it was *held:*—
1. That *A* was entitled to one half of the clear, net, annual income,
   without deduction for payments made for *B's* support.
2. That during the continuance of the trust the executors took no
   beneficial interest, as individuals, in any surplus or unexpended
   income.
3. That such income was to accumulate in their hands and be added
   from year to year to the principal of the trust fund.
4. That if income had been diverted to the payment of expenses prop-
   erly chargeable to principal, it must be restored, and, if necessary,
   by a sale of the realty.
Testamentary authority to sell, standing alone and unaided by other
   provisions of the will, does not either involve or imply authority
   to mortgage.
Through the action of the Court of Probate, under General Statutes,
   § 253, real estate held in trust may be mortgaged, whenever such
   mortgage will, in the opinion of such court, best promote the in-
   terest of the beneficiaries of the trust.

Argued November 1st—decided December 16th, 1904.

SUIT to construe the will of Frederick H. Hoadley of
New Haven, deceased, brought to and reserved by the Su-
perior Court in New Haven County, *George W. Wheeler*, *J.*,
upon the facts stated in the complaint, for the advice of this
court.

Frederick H. Hoadley of New Haven died in 1895, leaving a will, the first and second articles of which are as follows : —

### " *Article First.*

" I give and devise to my executors, as joint tenants, in trust as hereinafter declared, in fee simple all my estate, both real and personal, in whatsoever form it may exist, to hold on the following trusts :

" 1. To keep the same properly invested, and the real estate properly insured, with power to rebuild, and to replace in case of any injury to any improvement thereon, and to sell any real estate, and to give a clear title thereto, if they deem it necessary for the interest of the trust.

" 2. To collect the rents and profits, and to pay all the necessary expenses for the care and protection of the property.

" 3. To pay to my cousin, Maria Hoadley Bradley, now residing in Macclenney, Baker Co., Florida, the adopted daughter of my deceased father and mother, in equal quarterly payments, so far as reasonably practicable, one-half of the net annual income of said devised property. Each and all such payments, and all interests given under this clause of this article to my said cousin, shall be and remain to her sole and separate use, free of any control or interest of any husband she may have.

" 4. To provide for the support and maintenance of my uncle, Heli Hoadley, so far as he may be otherwise unprovided for, during the remainder of his natural life, in the sum not exceeding five hundred (500) dollars annually.

" I further empower said trustees, if they or the survivor of them think proper, to improve said real estate, and to replace or to alter the present buildings thereon at their discretion, and to mortgage said real estate to pay the expenses so incurred, or to secure any money borrowed to pay such expenses, and used to pay the same.

### " *Article Second.*

" Upon the death of my cousin, Maria Hoadley Bradley,

and my uncle, Heli, aforesaid, said trust shall cease, and the trust estate shall belong to my executors and to the children of my sister, Cornelia, by her first husband, absolutely and in fee simple, to each of my executors one-third of said estate, and to the children aforesaid of my sister, Cornelia, one-third of said estate."

Article third made a provision which has been executed. The plaintiffs were named as executors, and duly qualified. They have, in the execution of their trust, paid all the debts and expenses, and filed their administration account, which, after due notice to all parties in interest and hearing, has been approved and allowed. No appeal has been taken from the order of allowance. The necessary expenses connected with the probate of said will and the administration of said estate were charged in part against the principal of said estate and in part against the income; and as a matter of convenience a part of such expense, charged and chargeable to principal, has been paid out of the income of said estate, to the amount of $4,277.77, as shown by said administration account. Since the filing of said account said amount has been reduced to $3,277.77, by applying in reduction thereof the sum of $1,000, collected on a certain bond owned and held by said estate. The principal of said estate and of the trust fund created by said will now consists of real estate.

*John W. Bristol*, for the plaintiffs.

*William H. Ely*, for Royal H. Wilson *et al.*

*Henry Stoddard*, for Clinton H. Merriam *et al.*

*Erroll M. Augur*, for Maria H. Bradley.

PRENTICE, J. The questions propounded for our determination arise out of the conflicting claims of the executors in their individual capacities, of the beneficiaries specifically named in article first, and of the children of Cornelia and those who represent their interests.

The claim of Maria Hoadley Bradley to one half of the clear net annual income of the estate held in trust, without deduction on account of payments for the support and maintenance of Heli Hoadley, is in accordance with the manifest intention of the testator as expressed in the will.

The provision for the support and maintenance of Heli Hoadley should be made out of the remaining one half of the net income. If said one half shall at any time prove insufficient for the purpose, so much of the principal of the trust fund should be used as may be necessary to fill out the measure of the provision made.

The claim of the executors—that any balance of the net annual income remaining unexpended after the payments of one half thereof to Maria Hoadley Bradley and for the support and maintenance of Heli Hoadley belongs to them in their individual capacities by virtue of the provisions of article first—is unwarranted. On their behalf it is contended, that the language of this article expressing the gift to the executors as of "all my estate" and "in fee simple," the powers conferred, the obligation as to Heli's support imposed, and the absence of any gift of said balance or provision for its accumulation, disclose an intention on the part of the testator to vest in them as individuals a beneficial title thereto.

The executors are correct in saying that the intention of the testator as expressed in the will must be controlling. But there are serious obstacles in the way of arriving at the expressed intention contended for. In the first article the gift in trust is made, and most of the objects of the trust are therein found. The gift is made to "my executors," and not to persons named. It is declared to be "in trust," and it is later provided that the property be held "on the following trusts," which are specified, and no beneficial interest to the executors or the persons who are executors is therein expressed. These are the salient features which presented themselves in *Fairfield* v. *Lawson*, 50 Conn. 501. In that case there was a gift of real estate to "my executor." The gift was not in this connection expressed to be in trust, but

it was provided that the real estate be sold and the proceeds held in trust by the executor for purposes named. The trust failed, and the claim was made that the executor took a beneficial estate. The court, commenting upon the fact that the bequest was not to Fairfield by name but to the executor, and that it was provided that the proceeds were to be held in trust by him, said that the language used in these regards indicated that the testator intended to stamp all the property with a permanent trust, and held that the executor took nothing personally. The pertinency of this conclusion to the situation in the present case is emphasized by the fact already noted, that the trust feature of the gift is in the Hoadley will twice stated and thus more plainly stamped upon it. "If a testator expressly says, he gives upon trust, and says no more, it has been long established, that the next of kin will take." Lord Eldon in *Morice* v. *Bishop of Durham*, 10 Ves. Jr. 521, 526.

But this is not all. Article second provides that in the event named the trust should cease and the trust estate belong, absolutely and in fee simple, one third to each of the executors and the other third to the children of the testator's sister Cornelia. This provision is scarcely compatible with the theory that the testator intended, in the former article, to make a gift in fee simple to the executors subject only to certain trust charges. The relation to each other of the two articles, and their provisions, make it apparent that the testator intended, in the first to create and define a trust and nothing more, and in the second to provide for its termination and the gift over.

Much reliance is placed by the executors upon the absence of any provision for an accumulation of unexpended income. Over against this might be set the absence of any express gift of such income to the executors. But that aside, the absence of an accumulation provision is only one of several indications of the testator's intention, and, in view of the character and contents of the will, one by no means as significant as those of a contrary import already pointed out.

We are therefore of the opinion that the executors in their

individual capacities are not entitled to receive the unexpended balance of net income as it is annually determined: that all such balances should accumulate in the hands of the trustees and be added to the principal of the trust fund; and that the net income for the purposes of division shall be regarded as that arising from the trust fund as it may have been so augmented.

The questions as to the persons who are entitled to receive any unexpended balance or balances of net income, and as to the time or times when the same are to be paid over, have already been answered by implication. As all such balances become a part of the trust fund and are to be divided as such, the provisions of the will which are not in controversy control the time and manner of division.

All the parties concede that the $1,000 proceeds of the bond were rightfully applied in reduction of the $4,277.77, due from principal to income. In so far as this application helps to restore the income account to its true figures for the purposes of its division, it is of course proper and right. All of the payments made out of income which should have been made out of principal, must be treated as income in the ascertainment of the amount Maria Hoadley Bradley is entitled to receive as her share of net income. This share she is entitled to receive. If it has not already been paid her, a matter concerning which the record is silent, the money must be forthcoming for that purpose. The provision for the support of Heli must be met, if it has not. In so far as these demands remain to be satisfied, the necessary funds should come first out of the $1,000 on hand in cash, and any balance from the only remaining source, to wit, the real estate, which, although it now stands in the principal account, represents income to the amount of $3,277.77.

If the exigencies of the situation as indicated require the raising of money out of said real estate, the will contains sufficient authority to the executors to sell sufficient of it to obtain the required funds, if they shall deem such sale necessary for the interest of the trust. This testamentary authority to sell, standing alone and unaided by other provis-

ions of the will, does not, however, either involve or imply authority to mortgage. *O'Brien* v. *Flint*, 74 Conn. 502; *Freeman* v. *Bristol Savings Bank*, 76 id. 212. The only power to mortgage contained in the will is one limited in its purpose to the improvement of the real estate itself. General Statutes, § 253, provides a way in which real estate held in trust may, through the action of the Court of Probate, be mortgaged, whenever such mortgage will, in the opinion of the court, best promote the interest of the beneficiaries of the trust.

The Superior Court is advised to render judgment in accordance with the views herein expressed.

No costs in this court will be taxed.

In this opinion the other judges concurred.