The New Haven Bank, N. B. A., Executor and Trustee (Estate of Joseph E. Hubinger) *vs.* Joseph E. Hubinger, Jr., et al.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued June 14th—decided August 15th, 1933.

*S. Fred Wetzler,* for the plaintiff.

*William B. Ely,* for defendants Alexander B. Timm *et al.*

*J. Dwight Dana,* for the defendant Rena G. Hubinger Timm.

MALTBIE, C. J.   Joseph E. Hubinger died at New Haven July 30th, 1929, leaving a will executed by him May 16th, 1927.   In this, after making a number of specific bequests and one specific devise, in the Fifth Article he gave the residue of his estate to the plaintiff as trustee, with the following provisions:   It was to hold, invest and reinvest the estate until the termination of the trust "and then to transfer, pay, convey and deliver the principal of the trust fund as hereinafter directed."   It was to pay to the testator's son an annuity of $3600 a year during his life and to the testator's daughter an annuity of $6000 a year during her life and to his brother and two sisters an annuity of $12,000 each during their respective lives; should either his son or daughter die leaving a legitimate child or children by blood, the annuity before provided for the son or daughter should be paid to such child or children, the latter to take equal shares per stirpes; should the income in any year be insufficient to pay all these annuities, those to his son and daughter or their children were to be paid first and the balance distributed among his brother and sisters; should the income not be sufficient to pay the annuities to the son and daughter or their children, the trustee was directed to take a sufficient sum from the principal to make up the amounts specified.   "Upon the death of the last survivor" of the annuitants the "principal and capital" of such trust fund was to be divided into two equal parts; one part was to be paid to the "then living legitimate children by birth and blood" of the

son, legitimate issue of any deceased child to take the share of the child; the other part in similar language was given to the child or children of the daughter or their issue; if, "at the death of the last survivor" of the annuitants, either son or daughter had no legitimate child or legitimate issue of such child "then living," the part which would have gone to such child or children was to be added to the other part and disposed of as provided with reference to that; and if, "at the death of the last survivor" of the annuitants, neither son nor daughter should have a legitimate child or the issue of such child "then living" the trust estate was to be divided equally among the testator's "then living nieces and nephews."

At the testator's death the son was married but did not then and never had had any child nor has one been born to him since. His daughter had and now has two children, born respectively in 1913 and 1920. The testator's brother died before the testator, but his two sisters are still living. There had accumulated before March 1st, 1932, an excess of income above that required to pay all charges on the estate and the annuities specified, which amounted approximately to $24,000, and the plaintiff believed that in the future there would be an excess of income above the amounts required for these purposes. The questions asked concern the duty of the trustee with reference to this excess of income and the right to it.

Where a testator establishes a fund the income from which is to be used for certain purposes but that income is in excess of the amount required for those purposes, the question whether the excess shall accumulate and be added to the principal or shall be otherwise disposed of depends primarily upon the intent of the testator. Thus, in *Lyman* v. *Parsons,* 26 Conn. 493; *Andrews* v. *Rice,* 53 Conn. 566, 5 Atl. 823;

*Holcombe* v. *Spencer,* 82 Conn. 532, 74 Atl. 904; *Pierce* v. *Root,* 86 Conn. 90, 84 Atl. 295, and *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 152 Atl. 69, we found in the will an intent that there should be such an accumulation. Within the same class may be put the cases of *Townsend* v. *Wilson,* 77 Conn. 411, 59 Atl. 417, and *Bridgeport Trust Co.* v. *Marsh,* 87 Conn. 384, 87 Atl. 865; while in these cases the will contained no expression of an intent that the excess income should be accumulated, we found that a disposition of it as it accrued would be contrary to the scheme of the testator as disclosed in the will. In *Townsend* v. *Wilson,* the testator gave his property to his executors in trust, to pay one half of the net annual income to a cousin and to provide for the support of an uncle during his life in a sum not exceeding $500 annually, with a gift over at the death of the cousin of the "trust estate," one third to each of the executors and one third to the children of the cousin; the executors claimed the right to receive the balance of the net annual income after the payment of one half to the cousin and the making of provision for the support of the uncle; we sought the intent of the testator and concluded that any income not needed for the purposes specified should be added to the principal of the trust fund, saying (p. 415): "Much reliance is placed by the executors upon the absence of any provision for an accumulation of unexpended income. Over against this might be set the absence of any express gift of such income to the executors. But that aside, the absence of an accumulation provision is only one of several indications of the testator's intention, and, in view of the character and contents of the will, one by no means as significant as those of a contrary import already pointed out."

In *Bridgeport Trust Co.* v. *Marsh,* the testator gave

the residue of his estate to a trustee to pay $500 a month of the income to his wife, the trust to terminate at her death, and also provided that the trustee "as soon as practicable" should pay certain legacies, and then directed the distribution of the remainder of the estate among certain named beneficiaries; we held that the legacies were to be paid "as soon as practicable" after the trustee came into the possession of the property, but that the distribution of the remainder among the beneficiaries last referred to should be made at the termination of the trust; and we denied the claim of these beneficiaries to have distributed to them from time to time the excess of income not needed for the payments to the widow, saying (p. 397): "It has been suggested by counsel for the general beneficiaries that the excess of income after the payment of the $500 monthly sums to the widow should, as it accrues, be divided among them. We find in the will no warrant for such a course, and if pursued it would only serve to aggravate the situation as far as the special beneficiaries were concerned."

On the other hand, in *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 275, 135 Atl. 555, we found in the will an expression of an intent that excess income should not accumulate and we directed its distribution to the proper beneficiaries from time to time as it accrued. Where we have been called upon to decide whether there should be an accumulation of income in excess of that needed for uses declared and have found in the will no expression of an intent that this income should accumulate and a distribution of it as it accrues would not be contrary to the testator's scheme as disclosed in the will, we have uniformly held that there should be such a distribution. It is true that in *Andrews* v. *Rice,* 53 Conn. 566, 5 Atl. 823,

we said (p. 575) obiter, that if the testator had simply given one half of the income of the trust fund he had established to his daughter and $600 out of the other half to certain grandchildren and had given no directions as to what should be done with the balance of the income, the trustee would necessarily add it to the principal; but this was stated merely *arguendo* and does not accord with our later decisions. *Hoadley* v. *Beardsley,* 89 Conn. 270, 93 Atl. 535; *Shepard* v. *Union & New Haven Trust Co.,* 106 Conn. 627, 138 Atl. 809; *Belcher* v. *Phelps,* 109 Conn. 7, 144 Atl. 659. In *Hoadley* v. *Beardsley* we said (p. 280): "The existence of a trust to accumulate involves the presence of a direction, express or implied, by the creator of the trust, be he testator or settlor, for such accumulation;" and in *Belcher* v. *Phelps* we said (p. 18): "The method by way of accumulation is dismissed by counsel for the reasons that the will, neither in terms nor by implication, provides for or suggests an accumulation and the law does not favor it. By themselves these reasons are conclusive."

It may be stated, therefore, generally speaking, that where the will discloses an intent that excess income shall accumulate, or its distribution as it accrues will be contrary to the scheme of the will, it should be permitted to accumulate, unless, indeed, such an accumulation would be invalid; *Hoadley* v. *Beardsley, supra,* p. 280; *Belcher* v. *Phelps, supra,* p. 18; *Wilson* v. *D'Atro,* 109 Conn. 563, 567, 145 Atl. 161; *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 222, 152 Atl. 69; *Moeller* v. *Kautz,* 112 Conn. 481, 152 Atl. 886; that where the will discloses an intent that there shall be no accumulation of excess income or such an accumulation would be contrary to the scheme of the testator, or where the will discloses no intent either way, the excess income should be distributed

to those entitled to it as it accrues. Applying these principles to the case before us we find in the will no indication of any intent that the excess income should accumulate nor anything in the scheme of the will that requires it. Indeed, the terms of the will indicate that the possibility of there being such an excess was entirely overlooked. This is indicated by the provisions made for a division of the income among the annuitants should it not be sufficient to pay the sums provided for all and by the use in one instance of the words "principal of such trust fund" and in another of the words "principal and capital of said trust fund" where the testator is giving directions as to the disposition of the fund at the termination of the trust. We therefore conclude that the excess income beyond that needed for the uses directed in the will before us should not be accumulated but should be distributed at proper periods to those entitled to receive it.

We are thus brought to the question as to the proper persons to receive the excess of income. While this income will accrue for distribution at periodical intervals, the right to receive it from time to time is an interest which is capable of becoming vested under the terms of the will or of being treated as intestate estate. *Colonial Trust Co.* v. *Brown, supra,* p. 276. In *Hoadley* v. *Beardsley, supra,* the trust established was of the residue of the testator's estate and it provided that, at the expiration of the trust, the "remainder of my estate" should be divided among certain beneficiaries; the time for distribution had come and the trustee still held the excess income which had been permitted to accumulate; we held that the beneficiaries of the residue had a vested right to that income at the death of the testator and that it should be distributed to them. In *Colonial Trust*

*Co.* v. *Brown, supra,* the trust fund comprised the residue of the testator's estate and the will concluded with a paragraph giving all the rest, residue and remainder of his estate to "the heirs of the blood of my father" and we held (p. 276) that the right to receive the excess income as it might from time to time accrue vested in these heirs at the death of the testator as a part of the residue; and we held that to be so, although it was provided in the will that these beneficiaries should receive annuities in fixed amounts out of the income of the trust fund, basing our decision of the last point upon the ground that we could not find in the situation any intent upon the testator's part impliedly to exclude them from taking the interest in the excess.

In *Shepard* v. *Union & New Haven Trust Co., supra,* the will directed the trustee to pay to the testator's daughter $250 each month so long as she lived and after her death to each of his grandchildren or the children of any one that was deceased $100 each month, if the trust was not sooner terminated, and also directed that $1000 a year was to be paid for the education of one of the testator's grandsons if he took a college or professional course and the same sum to each of his granddaughters for a course in college or a young ladies seminary; and it then provided that the residue of his estate, exclusive of "these various claims upon it" should be paid, one half of his or her share to each of the grandchildren when he or she reached the age of thirty and one half when he or she reached the age of fifty; we found in these provisions a clear purpose on the part of the testator not to give the grandchildren any of the income except as it should come to them under the specific provisions of the will and that therefore the right to the excess of income

became intestate property and vested in the testator's sole heir at law.

In *Belcher* v. *Phelps, supra,* the testator, after providing an annuity for his grandson during his life and giving a life use in the residue to his wife, made a gift of one half of the residue on the death of the grandson to his children, if he had any surviving him, and we held that the gift to the children of the grandson was contingent, that therefore so long as the grandson lived, there was no person who could take the excess income as it accrued, and hence the right to it was intestate estate and vested in the grandson as next of kin of the testator; and we said (p. 20): "Nor is it true that there is any clear indication that the testator intended to exclude his grandson from the enjoyment of this income. The mere fact that he provides specifically for his seventeen year old grandson through an annuity and a bequest in trust does not permit, much less compel, this inference." In *Wilson* v. *D'Atro, supra,* we held a trust for accumulation void and as the accumulation directed was disposed of as a part of the residue, we applied the rule that where a disposition of a portion of a residue is void, the property cannot fall back into that residue but becomes intestate estate.

From these decisions the following general conclusions may be reached: Where there is an excess of income above that required for specified uses, the right to receive that excess as it accrues will pass under a general residuary clause, if it is adequate to carry it, and this disposition would not be contrary to the intent of the testator expressed in the will; the fact that the right to receive the excess income will vest in the same persons to whom definite portions of the income are given, will not prevent the application of this principle unless this would be con-

trary to the intent of the testator; but if a gift of the residue is contingent, so that there is no one with a definite right under the will to take the excess income as it accrues, that right will be intestate estate.

Applying these principles to the will before us, as we have already pointed out, the gift in remainder of the trust fund at the termination of the trust is expressed to be of the "principal" or of the "principal and capital;" and in view of the evident fact that the testator had overlooked the possibility of there being an excess of income beyond that needed for the specified uses, these expressions can hardly be deemed adequate to pass the right to receive that excess. That being so, the only conclusion which we can reach is that the right to that excess became intestate estate, without the necessity of considering whether the provisions for the distribution of the fund at the termination of the trust were contingent gifts or vested at the death of the testator.

The will directs the trustee to pay to the son the sum of $3600 per year in monthly instalments of $300 each during his life and makes similar provisions as to the other annuitants. The paragraph providing for the disposition of the income in the event that it is insufficient to pay all the annuities begins: "Should the income of said trust fund be insufficient in any year, to pay in full, all of the monthly legacies and payments provided" and later in the paragraph similar language is used. Despite the provisions for monthly payments and the reference to monthly legacies, the predominant thought of the testator was undoubtedly that he was creating annuities; this appears clearly in the reference to the insufficiency of the income "in any year"; indeed, because of the great fluctuation of income from month to month, the probability of which he must have realized, it is not

428

reasonable to suppose that he intended that the income received each month should be treated as a unit, and its insufficiency or excess determined upon that basis. Income received at any time during the year may be used to make the monthly payments; if in any month there should be a deficiency, it may be made up in subsequent months during the year; and any excess of income is to be determined upon a yearly basis. The duty of the trustee is to pay the excess income to which the next of kin are entitled only at yearly intervals.

A sufficient answer to all the questions propounded is this: The right to receive income which has accrued or will in the future accrue in excess of the sums required to pay proper charges and the annuities provided is intestate estate and the testator's next of kin, his son and daughter, are entitled to receive it, such excess to be determined and distributed at yearly intervals.

No costs in this court will be taxed to either party.

In this opinion the other judges concurred.